OPINION
{¶ 1} Defendant-appellant Larry J. Shipley appeals the January 4, 2002, Judgment Entry of the Stark County Common Pleas Court adjudicating him to be a sexual predator pursuant to R.C. 2950.09.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 7, 1989, appellant was convicted after a jury trial on one count of rape, in violation of R.C. 2907.02. Appellant was sentenced to an indeterminate prison term of not less than ten years nor more than twenty-five years.
 {¶ 3} The conviction arose from the following facts. In the late afternoon of August 4, 1990, Jennifer Farrens went to work at Ferraro's restaurant. She worked until 5 a.m. the following morning.
 {¶ 4} When Jennifer got off work the morning of August 5, it was still dark. She walked over to the parking lot next door where she had parked her car. When she got in her car, she emptied her pockets and took off her smock.
 {¶ 5} Suddenly, appellant approached her car door and told Jennifer to give him a ride. She told him no. Appellant repeated his request, asking Jennifer if she wanted to die. Appellant backed up his threat by sticking a tire iron in her side. Jennifer begged appellant not to hurt her. Appellant told Jennifer to give him a ride or he would stick the tire iron right through her.
 {¶ 6} Appellant crawled in the back seat of Jennifer's car and told her to start her car and go. After she started the car, he gave Jennifer directions where to go. Appellant eventually crawled up front, and took and held onto the back of Jennifer's neck.
 {¶ 7} Appellant instructed Jennifer to go to the Canton Motor Speedway. She told him she did not know where it was, so he told her how to get there. Since the entrance to the speedway was chained shut, he directed her to go elsewhere. While he gave her directions, appellant told Jennifer to shut up, quit crying, and he would not hurt her.
 {¶ 8} Following his instructions, Jennifer ultimately ended up in the back parking lot of Sugardale's. Upon arriving there, appellant instructed Jennifer to shut off the car, and took the car keys and threw them on the floorboard by him. Appellant then began kissing Jennifer against her will.
 {¶ 9} Jennifer told appellant to leave her alone. She then tried to push appellant away, but he kept trying to kiss her. Appellant finally threw Jennifer through the middle of the front seat.
 {¶ 10} Once in the back seat, appellant took off Jennifer's pants and shoes, and ripped off her shirt and began playing with her chest. Appellant then pulled down his pants and orally raped Jennifer. She repeatedly told appellant that she did not want to perform oral sex and did not know how.
 {¶ 11} Appellant next raped Jennifer vaginally. He finally put his penis back in her mouth and ejaculated. Jennifer spat out the ejaculate and wiped it on appellant's shirt.
 {¶ 12} After raping Jennifer, appellant pulled his pants up and crawled to the front seat of the car. Jennifer got out of the car. Appellant told Jennifer that she did not have permission to get out of the car and to put her clothes back on. Jennifer asked appellant to get out of her car and leave her alone, to which appellant replied that he would not, and that she was going to give him a ride back to the Ferraro's parking lot.
 {¶ 13} Jennifer started her car and drove. While she drove, appellant went through her purse, and threatened Jennifer that if she told anyone, he would know within twenty-four hours and she could just imagine what would happen the next time. He also promised Jennifer that if she kept her mouth shut, she would never see him again.
 {¶ 14} Upon returning to Ferraro's, appellant asked Jennifer if she wanted her bra. She replied that she did, and appellant started to leave. Appellant told Jennifer to leave as well, but "not to make him start firing across the parking lot."
 {¶ 15} Appellant testified at trial and admitted to being with Jennifer on the night in question, and admitted oral and vaginal sex with her. He stated that the victim consented to the sexual conduct.
 {¶ 16} Appellant appealed his conviction. This court affirmed the conviction by Judgment Entry filed November 26, 1990.[1] Appellant appealed pro se to the Ohio Supreme Court. The appeal was dismissed for want of prosecution.
 {¶ 17} Subsequently, appellant filed a petition for post conviction relief. The trial court overruled appellant's petition without a hearing. The trial court's decision was affirmed by this court in a Judgment Entry filed May 4, 1992.[2]
 {¶ 18} Subsequently, the warden of the prison in which appellant is serving his sentence recommended that appellant be classified as a sexual predator, pursuant to Chapter 2950 of the Ohio Revised Code. A classification hearing was conducted on December 31, 2001. At the hearing, neither party presented witnesses, but instead, the parties relied upon joint exhibits and the record in the case. The joint records included a 1989 indictment and arrest warrant from Green Bay, Wisconsin, charging appellant with one count of second degree felony sexual assault, a psychological evaluation from Akron Family Practices and appellant's institutional record.
 {¶ 19} Based upon an evaluation of the factors of R.C. 2950.09(B)(2) and the evidence presented, the trial court held that appellant should be classified as a sexual predator, pursuant to R.C. 2950.09. The trial court entered its judgment by Judgment Entry filed January 4, 2002.
 {¶ 20} It is from the January 4, 2002, Judgment Entry that appellant appeals, raising the following assignment of error:
 {¶ 21} "THE TRIAL COURT ERRED IN CLASSIFYING APPELLANT AS A SEXUAL PREDATOR WITHOUT CLEAR AND CONVINCING EVIDENCE TO SUPPORT SAID FINDING."
 {¶ 22} In his sole assignment of error, appellant contends that the trial court's classification of him as a sexual predator, as defined in R.C. 2950.01(E), was not supported by clear and convincing evidence. Revised Code 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."
 {¶ 23} Appellant was convicted of one count of rape, in violation of R.C. 2907.02(A)(2). Rape is defined as a sexually oriented offense under R.C. 2950.01(D).
 {¶ 24} In making a determination as to whether an offender should be adjudicated a sexual predator, the trial court shall consider all relevant factors, including, but not limited to all of the factors specified in division (B)(2) of R.C. 2950.09. See R.C. 2950.09(C)(2)(b). Those factors are:
 {¶ 25} "(a) The offender's age;
 {¶ 26} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 27} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 28} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 29} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 30} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 31} "(g) Any mental illness or mental disability of the offender;
 {¶ 32} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 33} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 34} "(j) Any additional behavior characteristics that contribute to the offender's conduct."
 {¶ 35} The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. 2950.09(C)(2)(b).
 {¶ 36} We review appellant's assignment of error under the manifest weight of the evidence standard set forth in C.E. Morris Co. v.Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 37} The trial court considered the factors set forth in R.C.2950.09(B)(2) on the record and concluded that appellant should be classified as a sexual predator. Upon our review of the evidence, we find that the trial court considered the factors set forth in R.C. 2950.09(B)(2) and that there was competent, credible evidence to support the findings that appellant was a sexual predator.
 {¶ 38} First, the State presented the record of the case, including the facts of the rape for which appellant was convicted. Those facts are presented in the Statement of Facts and Case, supra. Appellant's conduct exhibited cruelty by the multiple threats of violence he made to the victim.
 {¶ 39} Second, the evidence showed that in the same year in which the rape sub judice occurred, appellant was indicted for a sexual assault in Wisconsin based upon very similar facts. In the Wisconsin case, appellant allegedly waited in the parking lot for a waitress at a bar he had gone to that night. The victim gave appellant a ride to his truck. Once at the truck, the victim joined him in his truck. However, once in the truck, appellant pinned the victim down, shoved her into the compartment of the truck located behind the seats, and began to rape her. During the rape, appellant allegedly choked her while trying to remove her clothing. According to the criminal complaint, appellant attempted to vaginally penetrate her. However, when he was unable to do so, he rubbed his penis around her vaginal area and ejaculated on her leg.
 {¶ 40} Third, while appellant presented certificates indicating that he had completed programs for sexual offenders and had undergone a recent Akron Family Institute, Inc. psychological evaluation which found that appellant best met the "sexually oriented offender" classification, appellant continued to deny that he raped the victim. In the recent psychological evaluation, appellant denied that he forced the victim to have sex with him. Appellant contended that the sexual conduct was consensual. Appellant asserted that the victim lied when she characterized the sexual encounter as rape.
 {¶ 41} However, at one point previously, appellant admitted that the sexual conduct was not consensual. According to appellant's institutional record, appellant, during a psychological evaluation, admitted to raping the victim.
 {¶ 42} We agree with the trial court that appellant's recantation of his admission of rape and reversion to his denial of the offense demonstrates that appellant does not acknowledge his behavior. Further, appellant's reversion to his prior contention that the sexual conduct was consensual indicates the sexual offender programs in which he participated were not effective. Appellant has not taken responsibility for his actions or displayed remorse.
 {¶ 43} In conclusion, we find that there was competent, credible evidence to support the trial court's classification of appellant as a sexual predator, as defined in R.C. 2950.01(E), and that such finding is not against the manifest weight of the evidence.
 {¶ 44} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 45} Accordingly, the Judgment of the Court of Common Pleas of Stark County is affirmed.
By Edwards, J., Gwin, J. and Wise, J. concur.
Topic: Sexual Predator
[1] State v. Shipley (Nov. 26, 1990), Stark App. No. CA-8062, 1990 WL 187075.
[2] State v. Shipley (May 4, 1992), Stark App. No. CA-8817, 1992 WL 100364.